## IN THE UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**HEATHER MAXWELL,**

    **Plaintiff,**

    **v.**                             **Case No: 3:22-cv-19907**

**WALTON COUNTY, FLORIDA,**
**THE WALTON COUNTY BOARD**      **JURY TRIAL DEMANDED**
**OF COUNTY COMISSIONERS,**
**COMISSIONER MICHAEL**
**BARKER, in his individual capacity,**
**COMISSIONER DANNY**
**GLIDEWELL, in his individual**
**capacity,**

    **Defendants.**

## COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND ATTORNEYS' FEES AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Heather Maxwell ("Maxwell"), by and through her undersigned counsel, and files this Complaint for Damages, Declaratory Relief and Attorneys' Fees and Demand For Jury Trial against Defendants Walton County, Florida (the "County"), the Walton County Board of County Commissioners ("BCC"), Commissioner Michael Barker ("Barker"), in his individual capacity, and Commissioner Danny Glidewell ("Glidewell"), in his individual capacity, respectfully showing the Court as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This action arises in the context of a former employment relationship between Maxwell and the County.

2.      Maxwell faithfully served the County as an Assistant or Acting County Attorney from 2017 to 2021 without ever receiving a reprimand, negative performance review/evaluation or corrective counseling.

3.      In July 2021, after directly rebuffing romantic overtures of Commissioner William "Boots" McCormick ("McCormick"), and days later disclosing and complaining about same and other improper acts described herein to the Acting County Attorney, then-Chairman of the BCC Commissioner Trey Nick ("Nick"), and the County Administrator, Maxwell was terminated the following day as a result of prior unlawful involvement and conspiracy of Commissioners Barker and Glidewell (and very likely McCormick) for pretextual reasons in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. §§ 1983, 1985, the United States Constitution, and in direct and blatant contravention of the County and the BCC's own written policies.

4.      Indeed, just days after Maxwell rebuffed McCormick's romantic advances, Barker and Glidewell engaged in an intentional concerted effort (very likely with the involvement of McCormick), to discriminatorily and retaliatorily

terminate Maxwell's employment. Specifically, in direct contravention of County and BCC policies and regulations detailed herein, and in likely violation of Florida's Sunshine Law, Barker and Glidewell improperly instructed County Administrator Larry Jones ("Jones") to terminate Maxwell. Although Maxwell learned of this unlawful scheme and complained about same, disclosing relevant circumstances set forth herein, the County nonetheless brazenly effectuated her termination the very next day on July 20, 2021, via a written termination letter containing no explanation whatsoever of the purported reasons for her termination. The reasons for the termination provided by the County and BCC subsequently during the EEOC investigation process and otherwise are blatantly false and pretextual and do not adhere to the County and BCC's own written policies.

5.     Moreover, prior to being subjected to and rebuffing McCormick's inappropriate romantic overtures, Maxwell was subjected to numerous other uncomfortable actions by BCC Commissioners, indicative of the arrogant above-the-law, callous, "good ole' boy" environment fostered by certain current BCC Commissioners that Maxwell and others have endured.

6.     Such circumstances, further detailed herein, included an instance in or around late February/early March 2020 when a current Commissioner called Maxwell late at night saying he had a bad problem. The Commissioner then

3

proceeded to drop off a completely nude, married (to another), and intoxicated female former Walton County employee at Maxwell's residence for her to take care of.

7.    The same Commissioner further engaged in inappropriate conduct towards Maxwell just days before Maxwell's unlawful termination by sending racially derogatory text messages to Maxwell and other County representatives while the group was on a County business trip using the "N-word" and comparing African Americans to "monkeys."

8.    Maxwell files this action to remedy the unlawful treatment and adverse employment action suffered by her which culminated in her being unlawfully, discriminatorily, and retaliatorily terminated by Defendants for pretextual reasons in violation of Title VII, 42 U.S.C. §§ 1983, 1985, the United States Constitution, and the County and BCC's own policies that the BCC was previously admonished for not following by a Walton County Grand Jury. Maxwell seeks all compensatory damages and pay allowed by law in addition to punitive damages that would punish Defendants for their knowing, intentional, willful, and reckless disregard of clearly established constitutional and statutory rights. Maxwell further seeks declaratory relief pursuant to 28 U.S.C. § 2201-2202 that the practices of Defendants described in this Complaint exist and that they are unlawful, an award of costs and attorneys'

fees under 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

## THE PARTIES, JURISDICTION, AND VENUE

9.    Plaintiff Maxwell is a female citizen of the State of Florida and a resident of Okaloosa County, Florida. At all material times, Maxwell was employed by the County as an Assistant or Acting County Attorney. Maxwell is a member of a protected class, female, and submits herself to the jurisdiction of this Court.

10.    Defendant Walton County is a political subdivision of the State of Florida, governed by its Constitution and Florida Statutes. Art VII, Sec. 1, Fla. Const; Ch. 125, Fla. Stat. At all material times, the County has been an "employer" as that term is used and defined under applicable law.

11.    At all times relevant to Maxwell's claims, the County employed fifteen (15) or more employees for each working day in at least twenty (20) or more calendar weeks, including Maxwell.

12.    Defendant BCC is the governing body of Walton County and serves as the legislative branch of the County Government. The BCC consists of five (5) elected County Commissioners which at all material times and presently include Commissioners McCormick, Barker, Glidewell, Nick, and Tony Anderson ("Anderson").

13.     Defendant Barker has, at all material times, been a Walton County resident and Commissioner and presently serves as the Chairman of the BCC. At all times relevant to Barker's acts and omissions as alleged in this Complaint, Barker acted under the color of law. He is subject to liability under 42 U.S.C. §§1983, 1985. Barker is sued in his individual capacity.

14.     Defendant Glidewell has, at all material times, been a Walton County resident and Commissioner. At all times relevant to Glidewell's acts and omissions as alleged in this Complaint, Glidewell acted under the color of law. He is subject to liability under 42 U.S.C. §§1983, 1985. Glidewell is sued in his individual capacity.

15.     This Court has jurisdiction over all causes of action herein pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the Constitution, laws, or treaties of the United States.

16.     Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201-02.

17.     Venue in this action is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in the Pensacola Division of the United States District Court for the Northern District of Florida.

**CONDITIONS PRECEDENT**

18.     Maxwell has satisfied all conditions precedent to filing this action, including filing a Charge of Discrimination for sex discrimination and retaliation on November 16, 2021, with the United States Equal Employment Opportunity Commission ("EEOC") within 180 days of the last discriminatory and /or retaliatory act(s) and receiving a Notice of Right to Sue ("Notice") dated July 8, 2022, and received by Maxwell thereafter. A true and accurate copy of the Notice is attached hereto as **Exhibit A**. This action was filed timely within ninety (90) days thereafter.

**FACTUAL ALLEGATIONS**

## Maxwell's Employment With the County and Outstanding Legal Performance

19.     After graduating from The University of Florida, Fredric G. Levin College of Law, Maxwell was admitted to the Florida Bar in 2007 and has, at all material times, remained a Member in Good Standing of the Florida Bar.

20.     Maxwell first became employed by the County in or about November of 2017 in the position of Assistant County Attorney. At all times during Maxwell's employment, Maxwell faithfully and diligently performed her duties to the County and BCC.

21.     As Assistant County Attorney, Maxwell assisted the County Attorney in providing legal counsel to the BCC and to County staff by drafting pleadings and

discovery, providing legal opinions to the BCC and to County Departments and Divisions, reviewing contracts and other legal documents, drafting ordinances and resolutions, attending hearings, and performing other duties as required by the County Attorney.

22.     Former County Attorney Sidney Noyes ("Noyes") was Maxwell's supervisor from August of 2017 through Noyes's resignation as County Attorney in March of 2021.

23.     Because of Maxwell's outstanding performance, Noyes appointed Maxwell to serve as Acting County Attorney twice during Maxwell's tenure with the County during periods of maternity leave taken by Noyes – first from December of 2017 through March of 2018, and again from June to July of 2020.

24.     Throughout her employment with the County, Maxwell was never disciplined or reprimanded, nor did she ever receive any poor performance evaluations or corrective counseling concerning her work. To the contrary, even the County and BCC in its Statement of Position submitted in response to the Charge of Discrimination filed by Maxwell admitted:

> *Walton County does not dispute that for the majority of her employment Maxwell was a very responsible, capable, and competent Assistant County Attorney. Maxwell's single evaluation demonstrates a high level of performance and confidence by the then-County Attorney Sidney Noyes in Maxwell's abilities. Maxwell's performance and abilities ultimately resulted in WCBOCC naming Maxwell as the*

*interim County Attorney, leading to an increase in Maxwell's compensation during the period of time Maxwell had that additional responsibility.*

(Italics added).

25.     The lack of any performance or disciplinary issues on the part of Maxwell is further supported by the Affidavit testimony attached hereto as **Exhibit B** of former Deputy County Administrator Tonia "DeDe" Hinote ("Hinote"). See **Exhibit B** ("Hinote Aff."), Pars. 12, 17.[1]

---

[1] Hinote was terminated by the BCC in early 2022 based on allegations of misuse of her County-issued credit card. Ironically, several months later a major scandal broke where the same Commissioners (including the individual Defendants here) that terminated Hinote were investigated and found by the Walton County Clerk's Office to have engaged in similar credit card misuse on a significantly larger scale. Video and written stories concerning these matters to provide context can be found at:

https://www.nwfdailynews.com/story/opinion/2022/07/21/walton-county-commission-facing-credit-card-controversy-opinion/10072398002/

https://www.nwfdailynews.com/story/news/politics/government/2022/07/06/all-walton-commisisoners-violated-credit-card-policy-audit-finds/7791582001/

https://www.cbs42.com/regional/florida-news/florida-commissioners-fire-back-at-accusations-of-misusing-taxpayer-funded-credit-cards/

**The County and BCC's Powers, Limitations, and Policies Relative to Maxwell**

26.     The baseless justifications provided to date for Maxwell's termination by Defendants as discussed further herein are pretextual as evidenced, in part, by Defendants' failure to follow their own numerous applicable policies set forth as follows:

27.     Throughout Maxwell's employment with the County, the BCC and its Commissioners had no authority to terminate her employment. In fact, BCC written policies mandate that:

> ***Scope of Authority and Responsibility***
>
> *No Walton County BCC Commissioner, acting on their own individual authority, shall hire, transfer, raise the pay of, demote or terminate the employment of any Walton County BCC employee other than their respective aides or executive assistants.*

(italics added). Walton County Board of County Commissioners Human Resources Policy Manual ("BCC Policy Manual"), Sec. 1, p. 5, a true and accurate copy of which is attached hereto as **Exhibit C**.

28.     Further, pursuant to the Walton County Personnel and Policy Manual (Walton Co. Policy Manual"):

> ***AUTHORITY OF COMMISSIONERS***
>
> *No commissioner, acting on his or her own individual authority, may hire, transfer, raise the pay of, demote or terminate the employment of any county employee other than their respective aides or executive*

10

*assistants. Such actions can only be accomplished after the approval of the appropriate Division Director or the County Administrator in accordance with established personnel policy.*

(italics added). Walton County Policy Manual, Ch. 25, p.27, a true and accurate copy of which is attached hereto as **Exhibit D**.

29.     At all times material hereto, the BCC had direct hiring and termination authority over only three (3) County employees, the County Administrator, the County Attorney, and the Tourist Development Council ("TDC") Executive Director. See https://www.co.walton.fl.us/112/Commissioners. As described herein, BCC Commissioners were improperly and intimately involved in the termination of Maxwell for discriminatory and retaliatory reasons.

30.     Further, pursuant to the BCC Policy Manual:

***Dismissal for Unsatisfactory Service***

*Prior to any proceedings to dismiss an employee, the department director shall contact the Director of HR and review that employee's personnel file. A department director may recommend dismissal of any employee for just cause. Just cause shall include, but not limited to, negligence, incompetence, or inefficiency in the performance of assigned duties; repeated and/or gross substandard performance of assigned duties; insubordination; violation of rules, regulations, and policies; conduct unbecoming a public employee; unauthorized use, possession, or under the influence of alcohol or drugs while on duty; or conviction of a crime. County Administration and the Director of HR shall approve all terminations for cause prior to the termination occurring.*

(italics added).  BCC Policy Manual, Policy 12.3, p. 135.

11

31.     Moreover, the Walton Co. Policy Manual contains policies in Ch. 11 regarding disciplinary actions, including a progressive discipline policy, stating, in pertinent part:

> *It is the policy of Walton County to: 1) Provide a well-defined system of discipline that sets forth standards of conduct and specific guidelines for disciplinary actions and which will be applied to all employees equitably, without bias or prejudice.*
>
> *Section C – Application of Disciplinary Action*
> *1) Although internal consistency in administering discipline is desirable, numerous factors should be considered in determining the appropriate level of discipline to be assessed at each successive step.*
> *2) Some of the factors involved include time intervals between offenses, effectiveness of prior disciplinary actions, willingness to improve, overall work performance, job attitudes, and disciplinary actions previously taken with other comparable employees for similar offenses.*
> *3) Some infractions may be more serious in one case, because of the employee's responsibilities than in another case.*
> *4) A repetition of the same offense or other serious offenses indicates that more severe disciplinary measures should be administered.*
> *5) Certain offenses are of such a serious nature that immediate discharge upon first offense is applicable. Prior to any action to dismiss an employee, the department director will contact the Human Resources Director and review that personnel file.*
> *6) When circumstances permit, department directors are encouraged to pursue a philosophy of "progressive discipline" by administering gradually increasing disciplinary actions for each successive instance of employee misconduct. Each level of progressive discipline shall be fully documented for inclusion in the employee's human resources file.*
> *7) Incidents of misconduct may differ in individual cases from somewhat similar incidents, and the county retains the right to treat each incident on an individual basis without creating a precedent for cases that arise in the future.*

*8) These provisions are not to be construed as a limitation upon the retained rights of the County, but are to be used as a guide.*

(italics added).  Walton Co. Policy Manual, Ch. 11, pp. 19-20.

32.    Additionally, the Walton Co. Policy Manual specifically mandates there be a pre-disciplinary hearing in County disciplinary actions above a written reprimand, which Maxwell was never afforded:

*When a supervisor has determined that an employee's actions may require discipline above a written reprimand, a pre-disciplinary hearing will be scheduled and the employee notified in writing at least 24 hours in advance. At the hearing, the supervisor explains the charges and the type of disciplinary action being considered. The employee will be given an opportunity to offer any contrary evidence, explanation and/or comments. The employee is notified of the decision after management discusses and decides upon the appropriate disciplinary action.*

(italics added).  Walton Co. Policy Manual, Ch. 12, Sec. B, p. 21.

33.    These policies and procedures were not even remotely followed by Defendants or afforded to Maxwell in her discriminatory and retaliatory termination detailed below.

34.    Further notable is the fact that in 2015 a Walton County Grand Jury (the "Grand Jury") was impaneled to, in part, review the operations and policies of the Walton County Government including the BCC. As part of the Grand Jury's Report, the BCC was admonished relative to Commissioners' involvement in hiring and firing decisions of employees for which they had no authority over, failure to follow

13

progressive discipline policies of the County, and disparate treatment afforded to certain employees who had certain personal relationships with Commissioners. The Report recommended the reprimand of a Commissioner and the County Administrator and stated:

> …every person in County government should strictly adhere to the policies of the Human Resources Department including those dealing with the hiring and firing of employees.
>
> ***
>
> County Commissioners **should not be** involved in the day to day operations of the County.

(emphasis added).  A full copy of the pertinent section of the Report follows:

### INVOLVEMENT OF COUNTY COMMISSIONER IN DAY TO DAY COUNTY OPERATIONS

We have heard substantial testimony regarding the role of a County Commissioner in the day to day operations of County government. Numerous witnesses have testified that the role of the Commission is to set policy and establish a budget. As a group, the Commission has authority over the County Administrator, County Attorney, and the Director of the Tourist Development Council. Many witnesses have stated that individually, Commissioners have little or no authority. Despite these limitations, evidence indicates that a particular Commissioner is very involved in directing the day to day operations of County government. Witnesses have testified that this is greater here than in other locations where they have worked.

Of particular concern are the actions of County Administrator Larry Jones and District Five Commissioner Cindy Meadows. Evidence we have heard indicates that both Commissioner Meadows and Administrator Jones became directly involved in the hiring and firing of Planning Department employees. Evidence before us indicates that in these instances the ordinary chain of command was not followed and direct supervisors were given little or no input in the decision-making process.

Evidence indicates that in one case an applicant with a connection to Commissioner Meadows was hired for a position with little input from the department supervisor. Despite having no experience in this position, the employee was hired at a higher salary than others who were already working in the identical position. In a second situation, a planning department employee was terminated with little or no input from the department director and without following the County's progressive disciplinary procedures. Evidence indicates that Commissioner Meadows wanted this employee terminated and that Larry Jones directly ordered the termination.

We have also heard testimony regarding Commissioner Meadows' involvement in a code enforcement issue that resulted in normal procedures not being followed.

For these reasons, we believe County Administrator Larry Jones and Commissioner Cindy Meadows should be reprimanded for their failure to follow proper procedures in the hiring, firing, and direction of County employees. We also believe that every person in County government should strictly adhere to the policies of the Human Resources Department including those dealing with the hiring and firing of employees.

County Commissioners should not be involved in the day to day operations of the County.

6

14

35.     As shown further herein, Defendants have, as a matter of continued custom and practice, wholly failed to follow their own written policies and regulations concerning the discriminatory and retaliatory termination of Maxwell given certain Commissioners' direct and unlawful involvement in Maxwell's termination and Defendants' utter disregard for their own policies and procedures contrary even to the admonishment of the BCC just years prior by the Grand Jury.

### Noyes is Forced Out By Barker and the BCC and Adkinson is Appointed Despite Concerns of Conflicts of Interest

36.     Shortly after Barker's election to the BCC in 2020, Barker discontinued legal meetings with Noyes (a female) and Maxwell that were routinely held to review agenda items before upcoming BCC meetings. Barker recommenced these legal meetings once Clay Adkinson ("Adkinson") and the Adkinson Law Firm ("Adkinson Firm") were appointed as Acting County Attorney as described below.

37.     Upon information and belief, after attending a Zoom hearing in the Walton County Administration Conference Room at which Noyes and Maxwell were in attendance, Barker made derogatory statements to Jones about Noyes' physical appearance and informed Jones that the BCC was going to terminate Noyes' employment as County Attorney.

38.     Noyes resigned from her position as County Attorney in February of 2021 after having continual conflicts involving Barker and Glidewell and after learning from Jones about Barker's intent to have her terminated.

39.     During a February 16, 2021, BCC special meeting, immediately following the BCC accepting Noyes resignation notice, Nick suggested appointing Adkinson and the Adkinson Firm as Acting County Attorney.

40.     Glidewell, Barker, and McCormick all agreed with Nick regarding appointing Adkinson and the Adkinson Firm as Acting County Attorney, leading Maxwell to believe this appointment had been previously discussed and agreed upon amongst the BCC members in potential violation of Florida's Government-in-the-Sunshine Law, § 286.011, Fla. Stat. (2022), and Article I, Section 24 of the Florida Constitution, ("Sunshine Laws").

41.     The potential appointment of Adkinson and the Adkinson Firm was not noticed on the BCC special agenda, there had been no prior public discussion regarding the appointment, and, upon information and belief, the County Attorney position had not been previously advertised as vacant, as prescribed by County policy.

42.     Adkinson and the Adkinson Firm were officially appointed as Acting County Attorney by a four (4) to one (1) vote of the BCC on February 23, 2021, with

Anderson dissenting out of conflict-of-interest concerns regarding Adkinson and the Adkinson Firm's representation of certain clients that could be potentially averse to the County.

43.     Adkinson became Maxwell's supervisor in March of 2021 and remained so until her pretextual and unlawful termination in July of 2021.

44.     Upon information and belief, Adkinson had and has long-standing personal relationships with Nick, Barker, Glidewell, and McCormick.

## Inappropriate Incidents Involving Commissioners Preceding Events Directly Leading to Maxwell's Termination

45.     On several occasions throughout her employment, BCC Commissioners engaged in actions placing Maxwell in very uncomfortable positions.

46.     For example, in or around late February/early March of 2020, a current Commissioner called Maxwell late at night saying he had a bad problem. The Commissioner then proceeded to drop off a completely nude, married (to another) and intoxicated female former Walton County employee at Maxwell's residence for her to take care of.

## McCormick Begins His Romantic Pursuit of Maxwell Which is Rebuffed

47.     On or about June 28, 2021, Maxwell traveled to Orlando, Florida, for a conference with fellow County employees and BCC members, including

McCormick. During this trip to Orlando, over friendly conversation, McCormick bought several cocktails in the hotel lobby for Maxwell.

48.    After returning home from the conference, on July 2, 2021, Maxwell began receiving text messages from McCormick. Maxwell quickly realized that McCormick wanted a relationship of a romantic nature with her as the text messages that follow indicate:





49.   Maxwell responded to such messages with caution, in attempt to be cordial, but by July 7, 2021, it became apparent to Maxwell that McCormick's romantic interest in her was undeterred as he asked her in a text message about staying a "mystery" to Maxwell's children:



50.    Maxwell was fearful her acknowledgement or rejection of McCormick's advances would be communicated to Barker and/or Glidewell and that it would draw their ire and place Maxwell's employment with the County in jeopardy. Specifically, Maxwell was aware that Barker had been previously forced to resign as a Captain with the Walton County Sherriff's Office because of sexual harassment issues described in more detail below.

51.    Notwithstanding Maxwell's concerns, on July 7, 2021, realizing the importance of maintaining professionalism and to ensure that there was no

confusion, Maxwell communicated to McCormick, with great trepidation, that she had no intention of becoming romantically involved with him:



**<u>Barker and Glidewell Conspire and Take Unlawful Actions to Unlawfully
Terminate Maxwell's Employment in Retaliation for Being the Recipient of
and/or Rebuffing McCormick's Romantic Advances</u>**

52.     On July 8, 2021, the day after clearly rebuffing McCormick's romantic advances, Maxwell traveled to Washington D.C. on County business.

53.     During this trip, the same current Commissioner that had dropped the intoxicated, naked female former Walton County employee off at Maxwell's residence the prior year for her to take care of, engaged in further inappropriate conduct towards Maxwell by sending racially derogatory text messages to Maxwell and others while the two were in Washington D.C. on County business, using the "N-word" and comparing African Americans to "monkeys".

54.     Upon returning home from the Washington D.C. trip on July 12, 2021, Maxwell received an unsolicited phone call from Hinote in which Hinote informed Maxwell that she may be terminated when she returned to the office from her trip. (Hinote Aff., Par. 11).

55.     Specifically, Hinote informed Maxwell that while she was in Washington D.C. (just days after rebuffing McCormick's advances), Barker and Glidewell directed Jones to terminate Maxwell. (Hinote Aff., Par. 9).

56.     Such unlawful actions were taken by Barker and Glidewell because of Maxwell's gender and in retaliation for Maxwell rebuffing of McCormick's

22

romantic advances. Upon information and belief, McCormick disclosed his romantic pursuit of Maxwell to Barker and Glidewell and, likely, Maxwell's rebuffing of same. McCormick either requested Barker and Glidewell's actions or such actions were taken by Barker and Glidewell on their own volition.

57.    Notably, Barker, Glidewell and McCormick are, upon information and belief, close friends and undisputedly worked together as Walton County Sherriff's Deputies for many years.

58.    Barker's actions with regard to Maxwell were done with specific intent and knowledge of the unlawful nature of such actions given prior similar acts by him.

59.    Specifically, in 2010, Barker was forced to resign from his position as a Captain with the Walton County Sherriff's Office pursuant to an Internal Affairs Investigation or he would have been fired. The Investigation sustained that Barker, who had been place on administrative leave, had an inappropriate relationship with a subordinate female employee in his chain of command and caused a second female employee who initially reported the relationship to be subject to an investigation, claiming she had lied about the relationship (which in fact was true). As stated in the investigation summary:

23

*"She then went on to tell Lt. Maddox that Captain Michael Barker had sent her inappropriate texts messages just prior to her demotion. She said she 'had never turned him down because he had always reminded me that he was the boss'. She said that was the first time she turned him down and she was demoted a couple of days later. She also added that she felt they went on a "witch hunt" to demote her by compiling insignificant occurrences that normally wouldn't merit a demotion."*

(Internal Affairs Report IA# 10-21: 08/18/10)

*"▮▮▮▮▮▮ showed me texts on her personal cellphone from Captain Barker's personal cell phone number. She said they stayed at the Days Inn in Crestview, Florida on two occasions and they went to Mount Cheaha State park for a weekend trip. I was able to corroborate that he was at those locations through receipts and other documentation. I was not able to prove that she was there when he was there with him other than she knew the room numbers and the general timeframe of when he was there."*

(Internal Affairs Report IA# 10-21: 08/18/10)

*" I advised Captain Barker, in a letter, that an internal complaint of improper conduct had been filed against him and he was made aware of the alleged allegations from ▮▮▮▮▮▮ on August 5, 2010. He was subsequently placed on administrative leave. Captain Barker proffered his resignation on August 6, 2010, thus I was unable to compel him to provide me a statement".*

(Internal Affairs Report IA# 10-21: 08/18/10)

*"Based on the resignation of Michael Barker, the additional policy violations have been administratively closed. The Inappropriate Relationship violation was sustained because there were corroborative materials available prior to his resignation; Ms. ▮▮▮▮▮▮ was consulted and is in agreement with this disposition."*

(Internal Affairs Report IA# 10-21: 08/18/10)

60.     In a Memorandum drafted by Undersheriff Bill Chapman following the investigation, Chapman stated:

24



## MICHAEL A. ADKINSON, JR., SHERIFF
### Office of the Sheriff, Walton County

Memorandum

Re: Internal Affairs Case 10-21
Subject: Michael Barker
August 18, 2010

While reviewing Internal Affairs Complaint 10-21, I am reminded that supervisors have a responsibility through their daily actions and interactions to model compliance with all policies. Executive Staff members have a greater responsibility and, even more so, should strive against the perception of impropriety. Given the information obtained during this investigation, I find there are sufficient violations of Department Policy, that if Michael Barker had not resigned, I would have terminated his employment with this Agency. This complaint has been closed due to the resignation of Michael Barker on August 6, 2010.

Respectfully,

W. N. (Bill) Chapman
Undersheriff

A true and accurate copy of the Summary and Excerpts surrounding the investigations is attached hereto as **Exhibit E**.

61.     With the knowledge of Barker's past similar conduct and upon information and belief that in pressuring Jones to terminate her employment, Barker

25

and Glidewell were violating Sunshine Laws[2], violating prohibitions against County

Commissioners directing day to day operations of the County, violating County

personnel policies, and discriminating and retaliating against Maxwell for being the

recipient of and/or rebuffing McCormick's romantic advances, Maxwell sought

assistance from the undersigned Firm to disclose these circumstances to appropriate

County and/or BCC officials.

62.    On or about July 14, 2021, the undersigned Firm communicated with

Adkinson to discuss the circumstances of Maxwell's employment.

63.    On July 19, 2021, the undersigned met with Adkinson, Nick, and Jones

and fully disclosed and complained on behalf of Maxwell the relevant facts and

circumstances set forth herein including, but not limited to, Maxwell's rebuffing of

McCormick's romantic advances and Barker and Glidewell's improper involvement

in unlawful efforts to terminate Maxwell's employment.

64.    Despite these disclosures and complaints, the County and BCC

nevertheless summarily terminated Maxwell's employment the following day on

July 20, 2021, via a letter (the "Termination Letter"), attached hereto as **Exhibit F**,

---

[2] It is fully expected that written discovery and depositions in this matter will reveal
and confirm numerous Sunshine Laws violations by the BCC Commissioners and
other bad actors in this case. Maxwell fully reserves the right to amend or seek leave
to amend this Complaint to add such claims as provided for in §286.011(4), Fla. Stat.

which simply stated, "Please be advised that your employment with the Walton County Board of Commissioners is terminated, effective immediately."

65.    The termination letter did not provide *any* explanation or reasons for Maxwell's termination and the County and BCC failed to follow the numerous applicable policies set forth above with respect to progressive discipline, review of Maxwell's personnel file, determination of just cause or affording a pre-disciplinary hearing.  Instead, Barker and Glidewell's improper and unlawful efforts to terminate Maxwell because of her gender and rebuffing of McCormick's romantic advances were summarily effectuated.

66.    The County and BCC only offered an explanation regarding Maxwell's pretextual termination when it was forced to do so in its Statement of Position ("SOP") in response to Maxwell's Charge filed with the EEOC, attached hereto as **Exhibit G**.

67.    In its SOP, the County and BCC first alleged:

*During Maxwell's absence* [at an out-of-town conference that began Thursday July 8, 2021], *it became apparent that Maxwell had not completed discovery responses to written discovery associated with a significant land use litigation matter in which Maxwell was representing Walton County. When Maxwell requested assistance from Adkinson, Adkinson learned that little or no work had been undertaken to complete the discovery responses before the deadline for same. While not unusual if there has been an extension request, there was no indication that Maxwell had sought an extension, or started the process*

27

*of gathering the responsive materials or completing the written responses. As a result, Adkinson, through significant effort, completed the discovery responses in a manner to avoid sanctions or unnecessary expense to the County.*

(Ex. G, p. 3) (italics added).

68.     The discovery responses at issue were due on July 12, 2021. Maxwell sent an email to Adkinson on or about July 7, 2021, before leaving for the conference requesting assistance from Adkinson due to his familiarity, and the lack of her familiarity, concerning a particular land use issue in Walton County that the discovery requests pertained to. Although she no longer has access to this County email, Maxwell believes that in asking for assistance from Adkinson, she suggested she would and could secure an extension for the response, if necessary, should Adkinson request her to do so.

69.     Upon information and belief, Adkinson never responded to Maxwell, and instead planned to and has used these circumstances to pretextually justify Maxwell's termination. It is very well known that extensions to respond to discovery are extremely commonplace in litigation because of workloads, and that such extensions are routinely granted by opposing counsel and the relevant court. It would not therefore be uncommon at all that a lot of work on a particular discovery request would not have been completed leading up to a due date for a particular discovery request if no unreasonable extensions had been previously requested. Notably, the

County, which has sole access to the correspondences relevant to these discovery requests, did not included same in its SOP for the Commission's review. Adkinson failed to provide Maxwell any prior instruction, oversight, or guidance whatsoever regarding this or any other lawsuit under Adkinson's charge.

70.    The only other alleged legitimate reason proffered for Maxwell's termination in the SOP is a vague reference to Adkinson allegedly learning of "consistent lack of performance" by Maxwell from staff (Ex. G, p. 3), without any supporting documentation, statements or identity of such alleged staff members supporting same.

71.    Notably, from the time of Noyes' departure through the date of Maxwell's termination, Maxwell reported only to Adkinson, and any non-lawyer staff would have no qualification or basis for assessing Maxwell's performance as an attorney for the County. Adkinson and Maxwell had very little interaction in the time frame between Adkinson's appointment as Acting County Attorney in March of 2021 and Maxwell's termination in July of 2021. To reiterate, as admitted by the County, Maxwell had been an exemplary employee under the former County Attorney and otherwise, and there is no evidence that Adkinson ever had any issue with Maxwell's performance until immediately following her rejection of

McCormick's romantic overtures on July 7, 2021. The unlawful efforts to terminate her began just days later.

72.     At no time whatsoever prior to her termination was Maxwell ever counseled, reprimanded, or provided any criticism for her work performance by Adkinson or anyone else. The County and BCC has not named *any* employees or staff that allegedly had any issue with Maxwell's performance, nor has it shown any documentary evidence relating to same because none exists.

73.     Thus, the County and BCC in its SOP pointed to what we now know is an approximate two (2) day period between July 7 and July 9, 2021, upon which the alleged reasons for Maxwell's termination are based. These assertions are pretextual and notably allegedly occurred on or after the date Maxwell rebuffed McCormick's advances. Adkinson never counseled, reprimanded, or took any other actions toward Maxwell regarding these alleged performance issues. Instead, these allegations of poor work performance were only first raised when the County and BCC was forced to reply to Maxwell's Charge of discrimination.  They are pretextual.

74.     Moreover, Maxwell was not provided any of the progressive discipline procedures, employment reviews or pre-disciplinary hearing procedures mandated by County and BCC policies that have been provided to other similarly situated male employees that had not been subjected to and rebuffed the romantic

advances of a sitting County Commissioner and improperly and unlawfully targeted for discriminatory and retaliatory termination by other Commissioners and a County Attorney closely allied in wrong deeds with such Commissioners.

75.    Notably, the County and BCC's lack of credibility in this matter is made even more evident by several other blatantly untrue statements the County and BCC made to the EEOC.

76.    First, the County falsely asserted in their SOP (Exhibit G, p. 3) that:

> ***At no time*** *did Adkinson or Jones meet with any County Commissioners to address Maxwell's separation. Further, neither Adkinson or Jones was aware of any information from Maxwell to indicate that Maxwell made any form of complaint related to either her employment or the County's operations.*

(italics and emphasis added).

77.    It is expected that Hinote will testify in this matter, consistent with her attached Affidavit (Exhibit B), that Jones (and possibly Adkinson) indeed met with at least with Barker and Glidewell concerning terminating Maxwell, and that, in fact, Barker and Glidewell specifically directed Jones to terminate Maxwell. Accordingly, the assertion by the County and BCC that no such meeting took place is completely false information provided to the EEOC.

78.    Furthermore, it is indisputable that both Adkinson *and* Jones met with the undersigned and Maxwell on July 19, 2021, after Maxwell learned of her

possible termination on July 12, 2021, from Hinote and retained the undersigned. *Also* in attendance at this meeting was Nick. During this meeting Adkinson and Jones had separate private conversations with Nick concerning Maxwell and her possible termination. Also, during this meeting Maxwell did complain of the romantic overtures to Maxwell from McCormick that had begun following an out-of-town conference attended by Maxwell and McCormick that concluded on or about July 2, 2021. Thus, the County's assertion to the EEOC that "at no time" did the County Commissioners consult with Adkinson and Jones regarding Maxwell's termination (which occurred on July 20, 2021, after the above-described events per the termination letter, Exhibit F)[3] is simply not true.

79.     Also completely false is the statement by the County and BCC to the EEOC that neither Adkinson nor Jones were aware of any information from Maxwell to indicate that Maxwell made any form of complaint related to her employment. To the contrary, Adkinson and Jones were **specifically** informed of such at the July 19, 2021, meeting by the undersigned, the day *before* Maxwell was terminated.

80.     Second, the County's SOP (Exhibit G, p.3) that:

---

[3] It is telling that Maxwell's termination letter contains no mention of the reason(s) for termination contrary to the assertions of poor performance the County formally raised for the first time in its Statement of Position in a sloppy effort to legitimize the reasons for said discriminatory and retaliatory termination.

> ***Following*** *her separation, Adkinson did become aware of what appeared to be inappropriate text messages Maxwell received from another County official,* **but at no time <u>before</u> the decision to proceed with Maxwell's termination** *was Adkinson aware of the nature or content of such messages.*

is also completely untrue. (italics and emphasis added). Adkinson was clearly aware of the text messages **<u>before</u>** Maxwell's termination. The undersigned first contacted Adkinson regarding Maxwell on July 14, 2021. During the call with Adkinson, the undersigned informed Adkinson of the existence of the text messages and the romantic nature of same. Such indeed was the impetus for Adkinson, Nick, and Jones to eventually meet with the undersigned and Maxwell. During this meeting on July 19, 2021, Maxwell, Adkinson, Jones, and Nick were made aware of the nature and content of the text messages which were absolutely and specifically discussed. Thus, the County's statement above is wholly false as Maxwell was not terminated until July 20, 2021, per Exhibit F.

81.   Of note, less than a month after Maxwell's termination, Stan Sunday ("Sunday"), former Deputy County Administrator for the County, was (allegedly wrongly) accused of far worse offenses than Maxwell. Unlike Maxwell, Sunday was given the opportunity to resign from his position on August 6, 2021, and continue to be employed, via paid leave, and be paid his approximately $150,000 salary, including all benefits, until September 23, 2022. Copies of documents related to

Sunday's termination, notably including Barker and Glidewell's improper involvement in same, are attached hereto as **Exhibit H**. See also https://www.nwfdailynews.com/story/news/local/2021/08/11/mismanagement-blamed-walton-county-loses-another-key-employee/5538833001/

<u>**COUNT I – RETALIATION**</u>
<u>**IN VIOLATION OF TITLE VII**</u>

**(AGAINST THE COUNTY AND BCC)**

82.    Maxwell incorporates Paragraphs 1-81 herein by reference as if fully set forth herein.

83.    The County is an employer as defined in Title VII.

84.    Maxwell is an employee as defined in Title VII.

85.    Maxwell engaged in a protected activity under Title VII by rebuffing McCormick's romantic advances.

86.    Maxwell suffered a materially adverse employment action when the County terminated her employment on July 20, 2021.

87.    The County was aware of Maxwell's statutorily protected activity within the meaning of Title VII when it subjected her to the adverse employment action of termination.

88.    The adverse employment action was a direct and proximate result of the protected activity in which Maxwell engaged in.

34

89.    The County subjected Maxwell to adverse employment action because of her statutorily protected activity within the meaning of Title VII.

90.    In taking adverse employment action against Maxwell because of her statutorily protected activity, the County intentionally discriminated against Maxwell with respect to the compensation, terms, conditions, or privileges of her employment.

91.    As a proximate result of such intentional discriminatory acts by the County, Maxwell has suffered damages.

92.    The County's conduct alleged herein was purposeful with malice or reckless indifference to Maxwell's protected rights.

93.    As a direct result of the County's actions, Maxwell has suffered lost wages, future income, opportunities for advancement, and other pecuniary and non-pecuniary damages (including emotional harm) in amounts to be determined at trial.

## COUNT II– SEX DISCRIMINATION
## PURSUANT TO TITLE VII

### (AGAINST THE COUNTY AND BCC)

94.    Maxwell incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

95.    As described above, the County terminated Maxwell because of her sex in violation of Title VII.

35

96.    The County deprived Maxwell of her right to employment through its discriminatory conduct.

97.    The County is an employer as defined in Title VII.

98.    Maxwell is an employee as defined in Title VII.

99.    Maxwell if a member of a protected class as a female.

100.    The County took adverse employment actions against Maxwell, including terminating her employment without justifiable cause and for pretextual reasons.

101.    Maxwell was imminently qualified to do her job as Assistant County Attorney for the County, having practiced for eleven (11) years prior to this position and given that she provided outstanding performance during her tenure with the County including being named as Acting County Attorney twice and never receiving any reprimands, negative performance reviews or counseling.

102.    Maxwell at all times performed her duties owed to the County faithfully and in accordance with the standard set forth by the County.

103.    The County treated similarly situated male employees of the County more favorably than Maxwell.

104.    The County terminated Maxwell's employment because of her gender in violation of Title VII.

36

105.   The County's conduct alleged herein was purposeful with malice or reckless indifference to Maxwell's protected rights.

106.   As a direct result of the County's actions, Maxwell has suffered lost wages, future income, opportunities for advancement, and other pecuniary and non-pecuniary damages (including emotional harm) in amounts to be determined at trial.

## COUNT III – GENDER DISCRIMINATION AND RETALIATION IN VIAOLATION OF § 1983 FOURTEENTH AMENDMENT EQUAL PROTECTION

### (AGAINST THE COUNTY AND BCC)

107.   Maxwell incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

108.   42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

109.   Maxwell is a female and part of a protected class under the Equal Protection Clause.

110.   The County and BCC are "persons" within the meaning of 42 U.S.C. §1983.

111.   The County is a political subdivision of the State of Florida. The BCC is the governing body of the County and the legislative branch of County

government. The County and the BCC are liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County and BCC caused the violations of Maxwell's constitutional rights, and/or because County and BCC officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

112.   Although she had a history of positive performance evaluations and exemplary work performance, Maxwell was terminated from her position on July 20, 2021. This termination was motivated in whole or in part by Maxwell's gender and in retaliation for Maxwell's protected activity in rebuffing McCormick's romantic advances and complaining about same.

113.   The County and BCC's retaliatory and discriminatory practices have caused Maxwell harm, including severe emotional distress and lost wages and benefits.

114.   The County and BCC acted under color of law when it directly deprived Maxwell of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her for engaging in protected activity.

115.   As a direct and proximate result of the County and BCC's unlawful actions, Maxwell has suffered damages in amounts to be determined at trial.

38

116.   Accordingly, the County and BCC have violated Maxwell's rights as protected by 42 U.S.C. § 1983.

## COUNT IV – SECTION 1983 AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

### (AGAINST BARKER)

117.   Maxwell incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

118.   42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

119.   Maxwell is a female and part of a protected class under the Equal Protection Clause.

120.   Barker is a "person" within the meaning of 42 U.S.C. §1983.

121.   Barker as a BCC Commissioner is an official with final policymaking authority of the County. Barker is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County and BCC caused the violations of Maxwell's constitutional rights, and/or because County and BCC officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

122.   Although she had a history of positive performance evaluations and exemplary work performance, Maxwell was terminated from her position on July 20, 2021. This termination was motivated in whole or in part by Maxwell's gender and in retaliation for Maxwell's protected activity in rebuffing McCormick's romantic advances and complaining about same.

123.   Barker's retaliatory and discriminatory practices have caused Maxwell harm, including severe emotional distress and lost wages and benefits.

124.   Barker acted under color of law when he directly deprived Maxwell of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her form engaging in protected activity.

125.   As a direct and proximate result of Barker's unlawful actions, Maxwell has suffered damages in amounts to be determined at trial.

126.   Accordingly, Barker has violated Maxwell's rights as protected by 42 U.S.C. § 1983.

## COUNT V – SECTION 1983 AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

### (AGAINST GLIDEWELL)

127.   Maxwell incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

128.   42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

129.   Maxwell is a female and part of a protected class under the Equal Protection Clause.

130.   Glidwell is a "person" within the meaning of 42 U.S.C. §1983.

131.   Glidwell as a BCC Commissioner is an official with final policymaking authority of the County. Glidwell is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County and BCC caused the violations of Maxwell's constitutional rights, and/or because County and BCC officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

132.   Although she had a history of positive performance evaluations and exemplary work performance, Maxwell was terminated from her position on July 20, 2021. This termination was motivated in whole or in part by Maxwell's gender and in retaliation for Maxwell's protected activity in rebuffing McCormick's romantic advances and complaining about same.

133.   Glidewell's retaliatory and discriminatory practices have caused Maxwell harm, including severe emotional distress and lost wages and benefits.

41

134.   Glidwell acted under color of law when he directly deprived Maxwell of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her for engaging in protected activity.

135.   As a direct and proximate result of Glidewell's unlawful actions, Maxwell has suffered damages in amounts to be determined at trial.

136.   Accordingly, Glidewell has violated Maxwell's rights as protected by 42 U.S.C. § 1983.

## COUNT VI – CIVIL CONSPIRACY IN VIOLATION OF §1985
## (AGAINST BARKER AND GLIDEWELL)

137.   Maxwell incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

138.   Defendants Barker and Glidewell engaged in a conspiracy and unlawful agreement to deprive Maxwell of her constitutional and statutorily protected right to not to suffer adverse employment actions on the basis of her gender and retaliation for engaging in protected activity.

139.   This conspiracy was motivated by animus with respect to Maxwell's gender and her rebuffing of McCormick's romantic advances.

140.   The purpose of the conspiracy was to obtain Maxwell's termination from the County on a pretextual basis, knowing that the true motivation was gender discrimination and retaliation in violation of federal law.

141.   The purpose and effect of the conspiracy was part of the same effort by all Defendants' effort to deprive Maxwell of the substantive rights provided by the Fourteenth Amendment to the U.S. Constitution and by 42 U.S.C. § 1983 as alleged above.

142.   Accordingly, Barker and Glidewell have violated Maxwell's rights as protected by 42 U.S.C. § 1985.

143.   As a direct and proximate result of the County's unlawful actions, Maxwell has suffered damages in amounts to be determined at trial.

**WHEREFORE**, Maxwell respectfully requests that the Court:

a.      Enter judgment in her favor against Defendants on all Counts;

b.      Declare pursuant to pursuant to 28 U.S.C. § 2201-2202 that the practices described in this Complaint exist and that they are unlawful;

c.      Award Plaintiff front pay and back pay with interest and other job benefits, including the value of health benefits, sufficient to redress all of the economic harms that she has suffered;

d.     Award Plaintiff compensatory damages in an amount to be proven at trial sufficient to redress the harms that she suffered, including physical and emotional distress, humiliation, embarrassment, loss of income, and mental anguish;

e.     Award Plaintiff appropriate punitive damages in an amount to be proven at trial that would punish Defendants for their knowing, intentional, willful, and reckless disregard of clearly established federal constitutional and statutory rights as alleged herein;

f.     Award Plaintiff's reasonable attorneys' fees including under 42 U.S.C § 1988 and all taxable costs of this action; and

g.     Award such other and further relief in any form that this Court deems just and proper under the facts and circumstances as proved at trial.

## DEMAND TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues triable by a jury.

Respectfully submitted this 6th day of October 2022,

**HALL, GILLIGAN, ROBERTS
& SHANLEVER, LLP**

*/s/ David A. Roberts*
David A. Roberts
Florida Bar No. 0041629
Brian S. Abrams
Georgia Bar No. 611649
*Pro Hac Vice* Application to be Submitted
M. Hannah Marshall
Florida Bar No. 1035576
4987 East County Highway 30-A
Seagrove Beach, Florida 32459
Phone: (850) 468-4856
Facsimile: (866) 864-9312
droberts@hgrslaw.com (primary)
hmarshall@hgrslaw.com (secondary)
ssweeney@hgrslaw.com (secondary)

*Attorneys for Plaintiff*